Portland & Oxford Central Railroad Co. *v.* Inhabitants of Hartford.

---

PORTLAND & OXFORD CENTRAL RAILROAD Co., petitioners for mandamus, *vs.* INHABITANTS AND MUNICIPAL OFFICERS OF HARTFORD.

*Vote of town in aid of railroads—construction of—mandamus.*

A town, by virtue of Public Laws of 1867, c. 119, by two-thirds of the voters present at a legal meeting, voted to loan its credit to aid in the extension of a railroad, by issuing interest-bearing bonds to a certain amount in exchange for a like amount of preferred stock in the railroad, "at such time as the railroad company shall build its railroad to Canton Mills, provided it shall be completed to Canton Mills, and the cars are running and transporting freight and passengers over the road from Mechanic Falls to Canton Mills, on or before Jan. 1, 1870;" otherwise the vote should be void. *Held,* that the condition required a completion of the road, as well as a running of the cars, before the aid could be demanded.

And where the town, at a subsequent legal meeting, by a majority of the inhabitants present and voting, voted, "To issue bonds to the Portland & Oxford Central Railroad Company, for the sum named in the previous vote, taking a like amount of preferred stock in said road, in exchange, as contemplated in" the former note; *Held,* (1) That as the vote passed by only a majority, the company could claim no rights under it, as a vote under c. 119; (2) That the majority could not waive the condition of the former vote; and (3) That the latter vote does not, in terms, purport to modify the conditions of the former.

Whether mandamus would be a proper remedy for the raiload company to compel the issuing of the bonds of the town, in case the conditions of the vote had been complied with by the railroad company, *quære.*

PETITION FOR MANDAMUS.

The petitioners alleged, substantially,—

That at a legal meeting of the inhabitants of Hartford, held Sept. 12, 1868, under Public Laws of 1867, c. 119, two-thirds of the legal voters present and voting, voted, " That the town loan its credit to the Portland & Oxford Railroad Company, for the sum of six thousand five hundred dollars, to aid in the extension of said road from Hartford Center to Canton Mills, said loan to be issued to said company, in interest-bearing bonds, payable in twenty years, the interest to be paid annually at any national bank in Portland,

in exchange for a like amount of preferred stock in said road, at such time as said company shall build, or cause said road to be built, to Canton Mills, provided that said road shall be completed to Canton Mills, and the cars are running and transporting freight and passengers over said road, from Mechanic Falls to Canton Mills, on or before Jan. 1, 1870, and provided, also, that the amount of preferred stock issued on said road shall not exceed the sum of one hundred thousand dollars. Should the road not be completed to Canton Mills, and cars running, Jan. 1, 1870, and should the amount of preferred stock, issued on said road, exceed one hundred thousand dollars, making the whole stock in said road exceed the sum of three hundred and forty thousand dollars, the above vote, loaning the credit of the town, shall be null and void ; " that said loan did not exceed five per cent of the valuation of said town ; that the vote was communicated to the company, on Sept. 14, 1868, which, by its president, notified the inhabitants of Hartford, in writing, that the company accepted their proposal of aid.

That, relying upon the contract thus made, the company proceeded to complete the road from Hartford Center to Canton Mills, so that the cars were running over the same, and transporting freight and passengers on Jan. 1, 1870 ; and that the preferred stock, issued by the company, on the road, does not exceed the sum of one hundred thousand dollars, nor the whole stock three hundred and forty thousand dollars.

That, on Jan. 15, 1870, at a legal meeting of the inhabitants of Hartford, they voted, " To issue to the Portland & Oxford Central Railroad Company, bonds for the sum of six thousand five hundred dollars, taking a like amount of preferred stock in said road in exchange, as contemplated in a vote passed Sept. 12, 1868," and, in addition thereto, at the same meeting, it was voted to instruct the selectmen of said town to issue said bonds.

That the petitioners have requested the respondents to issue said bonds, as stipulated in the vote of the town, offering them an equal amount of the preferred stock of the company; but that the selectmen and treasurer refuse so to do.

Prayer that a rule be issued to the inhabitants of the town, and to certain persons named as selectmen and treasurer of the town, to show cause why a writ of mandamus should not issue, etc.

The answer of the respondents alleged, among other things, that the terms of the vote of Sept. 12th had not been complied with,—that the road was not completed; that the vote of Jan. 15th being passed by a majority only, was not valid; and that mandamus is not the proper remedy.

The presiding judge found, as matter of fact, that the road was not completed so as to entitle the petitioners to the bonds under the vote of Sept. 12, 1868; but ruled, as matter of law, that the vote of Jan. 15, 1870, entitled the petitioners to the bonds therein named. The ruling was made with the express agreement that either party should have the right to except, and that the whole case should thereupon go to the full court for revision.

The respondents alleged exceptions.

*Smith* and *Bradbury & Bradbury*, for the petitioners, elaborately argued the following propositions:

That the parties intended such a completion of the road as a first condition, as was necessary for running cars to Canton Mills by Jan. 1, 1870, as a second condition. The road to be substantially completed. When this was done, all other essentials would duly follow. That the town has enjoyed its benefits.

That the vote of Jan. 15, 1870, was a completed and binding acceptance of the road, and the running of the trains as contemplated by the vote of Sept. 12, 1868.

That an acceptance would operate as a waiver of all exceptions on the part of the respondents, and constitute a binding agreement for a legal consideration, to issue its bonds in discharge of the pre-existing indebtedness of the town therefor.

The original contract was entered into by a two-thirds vote, but the law has not altered the majority power of the town to control its recognition, subsequently, as a valid existing obligation, and based upon a fulfilled contract. The two-thirds power was exhausted in

the first vote. It was competent for the majority afterwards to construe the original vote, and to recognize a fulfillment of its conditions by the other contracting party. Two-thirds not necessary to raise the tax to pay bonds, voted under c. 119. If two-thirds vote was necessary after the original vote, a minority larger than one-third could defeat its execution.

Ch. 119 requires a two-thirds vote only when voting upon the sum to be raised "to aid in the construction of any railroad." By § 2, the town by majority vote may settle all questions of contract in respect to such aid. Same of § 3.

*Davis & Drummond*, for the respondents.

APPLETON, C. J. By the Public Laws of 1867, c. 119, any city or town was authorized to raise money to aid in the construction of any railroad in this State, "provided that two-thirds of the legal voters present, and voting at such meeting, shall vote therefor."

The inhabitants of Hartford, at a regular town meeting, duly held on 12th Sept., 1868, by the vote of two-thirds of the legal voters, present and voting, voted, "That the town loan its credit to the Portland & Oxford Central Railroad Company for the sum of six thousand five hundred dollars, to aid in the extension of said road from Hartford Center to Canton Mills, said loan to be issued to said company in interest-bearing bonds, payable in twenty years, the interest to be paid annually, at any National Bank in Portland, in exchange for a like amount of preferred stock in said road, at such time as said company shall build, or cause said road to be built, to Canton Mills, provided that said road shall be completed to Canton Mills, and the cars are running and transporting freight and passengers over said road, from Mechanic Falls to Canton Mills, on or before Jan. 1, 1870, and provided also that the amount of preferred stock issued on said road shall not exceed the sum of one hundred thousand dollars. Should the road not be completed to Canton Mills, and cars running, Jan. 1, 1870, and should the amount of preferred stock, issued on said road, exceed one hundred thousand

dollars, making the whole stock in said road exceed the sum of three hundred and forty thousand dollars, the above vote, loaning the credit of the town, shall be null and void."

The vote is conditional. It is to be null and void, if the road is not completed to Canton Mills, and the cars running, Jan. 1, 1870. . It is not enough that the cars are running. They may run over a road not completed. The condition is not that they should be so far completed that cars may run over it. The condition requires its completion equally with the running of cars.

The case finds that the railroad was not completed so as to entitle the petitioners to the bonds of the town under this vote.

At a town meeting duly notified and called on 15th Jan., 1870, a majority of the inhabitants of Hartford, present and voting, "Voted to issue bonds to the Portland & Oxford Central Railroad Company for the sum of six thousand five hundred dollars, taking a like amount of preferred stock in said road in exchange, as contemplated in a vote passed Sept. 12, 1868."

As this vote was passed by only a majority, the petitioners can claim no rights under it as a vote under the provisions of c. 119.

Can a town by the vote of a majority waive, change, or modify the terms and conditions of a vote of two-thirds, so as to bind the town by such waiver, change, or modification, in cases where, as under c. 119, the vote of two-thirds was required to bind the town?

The vote of Sept. 12, 1868, was an unit. The town had a right to prescribe the terms and conditions upon which it would render its aid to the petitioners. Its liability was conditional. It arose only by and through a vote of two-thirds. It could have no existence save by and through such vote. A majority at the September meeting could not have waived, changed, or modified any of the terms and conditions prescribed by the vote of two-thirds. If they could not at that meeting, they could not at any subsequent meeting, for the power of a majority is as great at one town meeting as at another. If they could change the contract in one essential, they might in another,—in all. If a majority could waive or change one condition, they could another. If they could waive or

modify the terms and conditions upon which the credit of the town was to be loaned, they might equally well change the sum to be so loaned.

But does the vote of Jan. 15, 1870, waive, change, or modify any of the conditions prescribed in the vote of Sept. 12, 1868?

The vote was to issue bonds, "as contemplated in a vote passed Sept. 12, 1868." But what was contemplated by that vote? Most assuredly, that the bonds of the town should be issued only upon the terms and conditions therein expressed, and upon none other, for it expressly provides, in case of a failure of the conditions precedent, that "the above vote, loaning the credit of the town, shall be null and void." To say that the bonds should be issued on terms and conditions other than those specified in the vote, would be to decide that they should be issued not as contemplated in the vote of September 12th. If the bonds were issued without a performance on the part of the petitioners of the conditions, to be by them performed, they most clearly would not be issued as contemplated by the vote. The vote, therefore, of January 15th, upon a fair construction of its terms, does not waive, change, or modify the vote of Sept. 12, 1868, nor does it purport so to do. It directs the issuing of the bonds as therein contemplated, and as all the conditions precedent, therein contemplated, have not been performed, it cannot reasonably be construed as requiring their issue when not contemplated by that vote.

It may well be doubted whether mandamus can be regarded as the proper remedy in a case like the present, when the liability of the defendants is contested, it being what is termed a prerogative writ and not a writ of right; but of that we give no opinion, inasmuch as upon the facts as proved, or as found by the justice presiding at *nisi prius*, we are satisfied that it should be denied. *Dane* v. *Derby*, 54 Maine, 95.     *Writ denied. Costs for respondents.*

Cutting, Kent, Barrows, and Danforth, JJ., concurred.

Tapley, J., concurred in the result.